IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KARY ABBE,

                Plaintiff,

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 3:16-cv-01424-HZ

OPINION & ORDER

Richard McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309

    Attorney for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Martha Boden
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kary Abbe brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on May 23, 2012, alleging disability as of January 7, 2009. Tr. 144-45.[1] Her application was denied initially and on reconsideration. Tr. 83-87, 91-94. On September 19, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 31. On October 17, 2014, the ALJ found Plaintiff not disabled. Tr. 26. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on insomnia, severe depression, anxiety, agoraphobia, and c-spine curvature. Tr. 157. Plaintiff was 41 at the time of the administrative hearing. Tr. 35. Plaintiff obtained a GED and has past work experience as a CNA and casino cleaning attendant. Tr. 158.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 13.

# SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 7, 2009 through her date of last insured of December 31, 2013. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: major depressive disorder, posttraumatic stress disorder ("PTSD"), general anxiety disorder, social phobia, attention deficit hyperactivity disorder, and disorder of written expression. *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with some non-exertional limitations:

> [Plaintiff] could perform simple routine and repetitive tasks consistent with unskilled work. She could have no public contact and only occasional superficial contact with coworkers. She could have occasional contact with supervisors. She also was limited to low-stress work, which is defined as work requiring few decisions and few changes.

Tr. 22. The ALJ concluded that Plaintiff could perform her past relevant work as a cleaning attendant. Tr. 25. Alternatively, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "merchandise marker/tagger" and "garment folder." Tr. 26. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

///

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by failing to properly evaluate the medical evidence and discounting Plaintiff's credibility. According to Plaintiff, because the ALJ erred, the residual functional capacity ("RFC") does not include all of her limitations. Further, Plaintiff contends that the ALJ ignored the conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles ("DOT"), and thus failed to identify occupations at step five of the

sequential evaluation process that are consistent with the medical evidence. Plaintiff's arguments are unavailing and, thus, the Court upholds the ALJ's decision.

I. **Medical Evidence**

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ may reject the uncontradicted opinion of an examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. If an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Barnhart*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752.

A. Examining Physician Dr. John Ellison

Dr. Ellison conducted a musculoskeletal examination of Plaintiff on September 25, 2012. Tr. 306. Plaintiff's main complaints were of neck pain, depression, anxiety, and agoraphobia. *Id.* Dr. Ellison noted that Plaintiff's pain and illnesses impacted her ability to use a keyboard, write

at a desk for a long time, jog, or ride horseback. *Id.* Plaintiff reported that she could take care of personal needs such as dressing and bathing without help, and she shopped for groceries occasionally. *Id.* However, Plaintiff mainly stayed at home and did not drive much because of her anxiety. *Id.*

Dr. Ellison diagnosed Plaintiff with chronic posterior neck pain, chronic anxiety and depression with agoraphobia, obesity, and edentulous. Tr. 307. As for Plaintiff's neck, Dr. Ellison noted that her range of motion was normal except "flexion limited to about 40 degrees and some discomfort at the extremes of motion in all directions." *Id.* Plaintiff had mild tenderness in the back of her neck generally and "reduced cervical lordotic curve." *Id.* Plaintiff had a good range of motion in her extremities, normal gait and coordination, and normal "motor strength/muscle bulk and tone." *Id.*

The ALJ assigned "limited weight" to Dr. Ellison's opinion because "he did not provide specific recommended functional limitations." Tr. 20. However, the ALJ noted that Dr. Ellison's findings "do generally support a determination that the claimant's neck condition is nonsevere based on only the mild findings on examination." *Id.*

Plaintiff argues that the ALJ erred by discounting Dr. Ellison's opinion solely because Dr. Ellison did not provide specific recommended functional limitations. According to Plaintiff, the RFC should have incorporated functional limitations stemming from Dr. Ellison's observation of Plaintiff's mild neck tenderness and limited range of flexion and motion.

The Ninth Circuit's decision in *Turner* is instructive. *See Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217 (9th Cir. 2010). In *Turner*, the claimant's treating doctor concluded that the claimant had PTSD and had learned to cope by living in an isolated manner. *Id.* at 1222. The doctor, however, did not say that the claimant was disabled or limited in his ability to work due

to the PTSD. *Id.* at 1223. The ALJ found that the claimant had the severe impairment of PTSD but was not disabled. However, the ALJ crafted an RFC that accounted for the PTSD by restricting the claimant to simple, repetitive tasks, an environment without a lot of background activity, and no public contact or working with other people. *Id.* at 1222.

The claimant in *Turner* argued that the ALJ erred by failing to give clear and convincing reasons for rejecting the findings of his doctor. *Id.* The Ninth Circuit disagreed. Because the doctor did not conclude that the claimant was disabled or had any PTSD-related limitations, there were no conclusions for the ALJ to reject and, therefore, the ALJ did not err by failing to provide reasons for rejecting the doctor's report. *Id.* To the extent that the doctor made observations regarding the claimant's PTSD, the ALJ had incorporated the doctor's observations into the claimant's RFC. *Id.* at 1223 (finding that the limitations in the RFC were "entirely consistent" with the limitations observed by the doctor).

Here, as in *Turner*, Dr. Ellison's opinion did not propose specific functional limitations or opine that Plaintiff is disabled, but instead made specific observations about Plaintiff's impairments. The ALJ considered those observations and incorporated them into his conclusion that Plaintiff's neck condition is not a severe impairment—a conclusion that Plaintiff does not challenge. Thus, like the ALJ in *Turner*, the ALJ here did not reject any of Dr. Ellison's conclusions. Instead, the ALJ incorporated Dr. Ellison's observations into his determination of Plaintiff's impairments, which guided the formulation of the RFC. While an ALJ errs when he formulates an RFC that neither incorporates a doctor's opinion of the claimant's work limitations nor gives specific and legitimate reasons for rejecting it, *see Martin v. Commissioner of Social Security Administration*, 472 F. App'x 580 (9th Cir. 2012), here there is no error because Dr.

Ellison offered no opinion on Plaintiff's work limitations that the ALJ was required to accept or justify rejecting.

B. Examining Psychologist Dr. David M. Freed

Dr. Freed evaluated Plaintiff's mental health on September 10, 2014. Tr. 319. Dr. Freed conducted a review of records, interviewed Plaintiff, and administered a variety of tests. *Id.*

Dr. Freed diagnosed Plaintiff with major depressive disorder, recurrent, severe without psychotic features; post-traumatic stress disorder; generalized anxiety disorder; social phobia; attention deficit hyperactivity disorder, inattentive type; and disorder of written expression. Tr. 324-35. Dr. Freed also completed a Functional Assessment Form for Plaintiff, in which he assessed moderate limitations in the following activities:

- Understand and remember detailed instructions
- Carry out detailed instructions
- Maintain attention and concentration for extended periods of time
- Maintain regular attendance
- Work in coordination with or proximity to others without being distracted by them
- Complete a normal work week without interruptions from psychologically based symptoms and/or perform at a consistent pace without an unreasonable number and length of rest periods
- Interact appropriately with the general public
- Accept instructions and respond appropriately to criticism from supervisors
- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes
- Travel in unfamiliar places or use public transportation
- Set realistic goals or make plans independent of others

Tr. 326-27. Dr. Freed did not assess any "moderately severe" or "severe" limitations. *Id.* Dr. Freed also provided a narrative:

> Ms. Abbe suffers from recurrent depressive and anxious symptoms that have been refractory to treatment with a wide variety of psychotropic medications. In addition, symptoms of PTSD and social phobia are significant.

Tr. 327.

The ALJ assigned "partial weight" to Dr. Freed's opinions. Tr. 24. The ALJ stated that he considered Dr. Freed's opinions in "assessing the significant mental limitations set forth in the residual functional capacity." *Id.* However, the ALJ discounted Dr. Freed's opinion for several reasons: (1) the evaluation was nine months after Plaintiff's date last insured (December 31, 2103) and there was insufficient evidence that the level of severity Dr. Freed found existed prior to Plaintiff's date last insured, "based on the relatively routine treatment records from 2012, and the fact she did not seek additional treatment in 2012 and 2013"; (2) Dr. Freed's one-time report was not supported by similar severity in the longitudinal treatment records; and (3) Dr. Freed's opinions were internally inconsistent. *Id*.

The ALJ reasonably discounted Dr. Freed's opinion because it was based on evidence outside of the relevant period. *See, e.g.*, *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (affording little weight to a psychiatric examination and diagnosis after the claimant's injury and expiration of disability insured status). While evidence generated after the date last insured can be relevant and probative when it bears upon the severity of the claimant's condition before the expiration of the insured date, Plaintiff fails to make such a showing in this case. Instead, the ALJ explained that the evidence suggests that Dr. Freed's later evaluation is not reflective of Plaintiff's limitations prior to the expiration of her disability insured status.

The case cited by Plaintiff, *Greger v. Barnhart*, does not help her. 464 F.3d 968 (9th Cir. 2006). In *Greger*, the finding that the claimant performed carpentry work "'under the table' . . . well after his date last insured" provided a clear and convincing reason to reject his testimony regarding pain and limitations. *Greger*, 464 F.3d at 972. The inconsistency between the claimant's supposed limitations during the period he was insured and his behavior after his date

last insured weighed against crediting his testimony regarding pain. Therefore, the information generated after the date last insured was relevant and probative.

Here, on the other hand, the issue is the lack of evidentiary support from the period prior to the expiration of Plaintiff's date last insured to support Dr. Freed's opinion. While Dr. Freed may have relied on relevant information he gleaned from his observation of Plaintiff, there is no support for the inference that his observations reflected Plaintiff's symptoms or limitations from months or years prior to the examination.

Plaintiff also argues that the ALJ erroneously discounted Dr. Freed's opinion because it was a "one-time report." Pl.'s Br. 8, ECF 17. However, the ALJ elaborated on his reasoning by explaining that the report was not supported by the longitudinal treatment records. Thus, Plaintiff's argument is unavailing.

Finally, the ALJ reasonably discounted Dr. Freed's opinion because it was internally inconsistent. Dr. Freed assessed Plaintiff with only mild to moderate limitations in her ability to complete a normal work day or work week and mild limitation in her ability to sustain an ordinary routine, yet he also wrote that her symptoms are severe enough that she would have difficulty concentrating to complete a normal work day and would struggle to be able to maintain an ordinary routine. *Contrast* Tr. 325 *with* Tr. 326. The Ninth Circuit has made clear that such internal inconsistencies may constitute relevant evidence and the ALJ is responsible for determining whether such inconsistencies are material. *Morgan*, 169 F.3d at 603. The Court upholds the ALJ's decision to discount Dr. Freed's opinion.

///

## II. Plaintiff's Credibility

Plaintiff contends that the ALJ's reasons for rejecting her testimony about her impairments and their limiting effects are not supported by substantial evidence. The Court affirms the ALJ's decision to discount Plaintiff's credibility.

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan*, 169 F.3d at 599.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim*, 763 F.3d at 1163; *Tommassetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan*, 169 F.3d at 600.

Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

Here, Plaintiff testified that she cannot work because she feels like people are judging her all of the time. Tr. 37. Even if she could get past the interview process, Plaintiff would worry about her boss judging her. Tr. 43. Plaintiff said that the thought of other people reviewing her work gives her a panic attack and she fears getting in trouble for not doing a good job. *Id.* Plaintiff testified that she has panic attacks at least once a day for 10-15 minutes. *Id.*

According to Plaintiff, her mental limitations are the primary reason she cannot work. *Id.* ("It's not so much the physical part of doing the job as the mental."). However, she also described having neck pain. Tr. 44. She can only sit at the computer for about 10 minutes at a time. *Id.* While she gardens, she does not consider it physically demanding because she just "plant[s] a few seeds" and weeds once or twice a month. *Id.* She also cares for horses, which sometimes is physically demanding. Tr. 45.

Plaintiff testified that she mostly stays in her house and that she will always have someone with her if she leaves the house. Tr. 39. Plaintiff described having good and bad days. *Id.* On a good day, she might go grocery shopping. *Id.* On bad days, she might not leave the house for two weeks except to feed her horses. *Id.* Plaintiff lives with her daughter and grandchildren. Tr. 40. The only people she socializes with are her mother and a friend who lives in California. Tr. 41.

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible for several reasons: (1) Plaintiff's treatment was very limited; (2) the medical record did not support the severity of alleged symptoms and treatment records showed Plaintiff's anxiety improved with treatment; (3) Plaintiff's alleged symptoms were inconsistent with her reported activities of daily living.

A. Plaintiff's Treatment

The ALJ discounted Plaintiff's credibility because her treatment was "quite limited." Tr. 21. Plaintiff had almost no treatment for one and a half years prior to her date last insured, December 31, 2013. *Id.* Plaintiff testified that she lost her health insurance in 2012 and did not obtain it again until 2014. Tr. 38. According to Plaintiff, she did not explore low-cost or no-cost resources. Tr. 40. Based on Plaintiff's testimony, it appears that she did not take medication from 2012 until two months before the administrative hearing in September of 2014. Tr. 38. The ALJ opined that if Plaintiff's symptoms were as serious as alleged, she would have sought treatment. Tr. 21. In addition, the ALJ noted that "[Plaintiff's] absence of treatment means there is virtually no evidence to confirm her assertions of severity for the year and [a] half before her date last insured." *Id.*

"In assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (internal quotation marks omitted). "According to agency rules, 'the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]'" *Id.* (quoting SSR 96–7p).[2]

---

[2] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Molina*, 674 F.3d at 1114 (quoting *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009)). They "'reflect the official interpretation of the [SSA] and are entitled to some deference

However, a claimant's failure to follow prescribed treatment because she is unable to afford such treatment is generally accepted as "justifiable" and, thus, such "failure" would not preclude a finding of disability or that disability continues. *See* SSR 82-59, *available at* 1982 WL 31384; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[D]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.").

Here, the ALJ improperly discounted Plaintiff's credibility based on her failure to receive medical treatment during a period in which she had no insurance. While Plaintiff did not testify that her lack of funds caused her not to seek treatment, it is a reasonable inference given that she saw a psychologist until she lost her insurance in 2012 and then sought out a new therapist within months of obtaining insurance again in 2014. Tr. 38.

B. Medical Record

The ALJ also discounted Plaintiff's credibility because the medical records from when Plaintiff received treatment did not support the severity of her alleged symptoms. Tr. 21. The ALJ cited to several parts of the record, including treatment records in which she presented as alert, pleasant, and cooperative, with her attention, concentration, and cognition intact. *Id.* The ALJ also cited to numerous records that support the conclusion that Plaintiff's anxiety improved with treatment. Tr. 23.

Plaintiff challenges the ALJ's citation to records in which she presented as alert, pleasant, and cooperative, arguing that those records reflect Plaintiff's "good days" without accounting for her "bad days." The Court agrees that Plaintiff's presentation as reflected in chart notes does not undermine her overall allegation of limitations, especially when she explained the cyclical nature of her symptoms:

---

as long as they are consistent with the Social Security Act and regulations.'" *Id.* (quoting *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir. 2006)).

> There's good days and bad days. I won't leave my house besides to go feed the horses for two weeks at a time. And then I'll go grocery shopping on a good day or something, but I still have to have somebody with me.

Tr. 39.

On the other hand, Plaintiff fails to address the treatment records cited by the ALJ that suggest her anxiety improved with treatment. *See, e.g.*, Tr. 248 (describing "noticeable, albeit slow, progress" in therapy); Tr. 258 ("less overall anxiety"); Tr. 312 ("minimal anxiety" and "generally stable mood"). While an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), the ALJ in this case was entitled to consider this factor along with the other valid reasons he gave in support of his negative credibility determination of Plaintiff. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence, along with other reasons for discounting claimant's credibility constituted substantial evidence); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

    C.  Activities of Daily Living

Finally, the ALJ found that Plaintiff's allegation that she was unable to be around people was inconsistent with her reported activities of daily living. Tr. 23. Plaintiff argues that the ALJ erred because he failed to determine the amount of the day that Plaintiff spent on her reported activities or how the activities are transferable to a work setting. Plaintiff's argument, however, misses the ALJ's point.

There are two grounds for using daily activities to form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). One is what Plaintiff refers to: when activities meet the threshold for transferable work skills. *Id.* The second, however, is what

the ALJ relied on: when activities contradict a claimant's other testimony. *Id.* For example, in *Molina*, the Ninth Circuit affirmed the ALJ's finding that the claimant's alleged inability to tolerate even minimal human interaction was inconsistent with her daily activities throughout the disability period. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). "Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks." *Id.* Similarly here, the ALJ reasonably concluded that Plaintiff's activities, including shopping, driving, traveling, and going to a party, undermined her claim that being around people caused her panic attacks.

In sum, the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility. While the Court does not uphold all of the reasons the ALJ provided, there is substantial evidence supporting the ALJ's decision based on the reasons this Court affirms. *See, e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming the ALJ's credibility determination even though one of the reasons provided by the ALJ was based on an assumption not confirmed by the record).

### III.     RFC

Plaintiff argues that the RFC is not supported by substantial evidence because it does not include the limitations assessed by Dr. Ellison and Dr. Freed. However, as discussed above, the ALJ properly discounted the two doctors' opinions. Thus, the ALJ did not err by failing to incorporate any of their assessed limitations into the RFC.

### IV.     Step Five

Plaintiff argues that the ALJ erred at step five of the sequential analysis by finding that Plaintiff could perform work as a merchandise marker/tagger and garment folder, even though

such jobs involve more steps and instructions than Plaintiff can perform. There is no need for the Court to reach this argument. The ALJ's step five finding was made as an alternative to his step four finding, which Plaintiff does not challenge, that Plaintiff can perform her past relevant work as a cleaning attendant. Tr. 25. Because the ALJ did not err in crafting an RFC, and because the VE found that Plaintiff could perform her past work, even with the assigned RFC, the ALJ properly found that Plaintiff is not disabled.

## CONCLUSION

The Court affirms the Commissioner's decision.

IT IS SO ORDERED.

Dated this \_\_24\_\_ day of \_\_Oct_____, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge